UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EDWIN N. HOLMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-01307-TWP-MJD |
| ) | |
| MARION COUNTY SHERIFF, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Marion County Sheriff ("Sheriff Forestal") (Dkt. 36). *Pro se* Plaintiff Edwin N. Holmes ("Holmes") filed his Complaint against Sheriff Forestal alleging violation his Eighth Amendment rights by Sheriff Forestal failing to provide necessary medical care after a jailhouse attack, failing to maintain or create policies to ensure proper medical treatment for all inmates, and state law claims for negligence (Dkt 1). For the reasons explained below, summary judgment is **granted**.

**I. STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II. FACTUAL BACKGROUND

Because Sherriff Forestal has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Holmes and draws all reasonable inferences in his favor as the non-moving party. *Khungar*, 985 F.3d at 572–73.

Although Holmes responded to the Motion for Summary Judgment, he did not respond to Sheriff Forestal's arguments or designate any evidence in the record that would create a dispute of material fact. Instead, Holmes argues that Sheriff Forestal failed to provide necessary discovery (Dkt. 39 at 1). In his purported response, Holmes states that he "requested the court several times to assist and or intervene in assisting in Ordering [Sheriff Forestal] to supply the necessary information." *Id*. at 1. However, Holmes is mistaken as the Magistrate Judge granted his discovery-related motions (*See* Dkts. 30 and 34). Sheriff Forestal filed a Notice of Compliance on December 23, 2024, (Dkt. 35), and Holmes neither disputed Sheriff Forestal's compliance nor filed any additional motions to compel in this matter. Accordingly, the facts alleged in the motion are

"admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). But "[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

### A. The Parties

At all relevant times Holmes was an inmate in the custody of the Marion County Sheriff's Office ("MCSO"), held at the Marion County Adult Detention Center ("ADC"), and Sheriff Forestal was the Marion County Sheriff (Dkt. 1). Although Holmes does not name Sheriff Forestal in the caption of his Complaint, he alleges claims against Sheriff Forestal both individually and in his official capacity as the head of the MCSO. *Id*. at 9.

### B. January 2023 Intake into ADC

Holmes was ordered into MCSO custody on January 26, 2023, to await sentencing (Dkt. 36-2 at 2). Upon arrival at the ADC, inmates receive an Inmate Handbook that states the MCSO provides routine medical care and that once an inmate fills out a health care request form, it will be given to medical staff. *Id*. at 3, 12, 28–29. The handbook also states that Wellpath, LLC, ("Wellpath"), MCSO's contracted medical provider, is obligated to provide medical screenings for all inmates upon arrival. *Id*. at 3, 31. Holmes testified in his deposition that he did not receive a handbook when he arrived at the ADC in January 2023 (Dkt. 36-1 at 15:14–16).

Wellpath medical records indicate that upon his arrival at ADC, Holmes received a screening on January 26, 2023, at which he was clear and coherent (Dkt. 36-1 at 83). The records state that Holmes reported a current or past mental health diagnosis of ADHD and anxiety. *Id*. at 86. Holmes also provided personally identifiable information, such as his previous service in the

3

Navy. *Id*. at 81-91. Wellpath medical records also report Holmes was put on an alcohol withdrawal protocol on January 26, 2023, his Xanax prescription was verified on January 26, and various medication orders were placed on January 28 (Dkt. 36-3 at 4-7).

Holmes admits that his signature appears on the form which states he was provided with medication to treat alcohol withdrawal, but he "was not aware that anyone gave [him] or tried to give [him] any medication for alcohol withdrawal, because [he] wouldn't need that." (Dkt. 36-1 at 40:10–13). He further denies that received his prescribed Xanax. *Id*. at 47:8–17.

### C. The February 2023 Assault on Holmes

At approximately 5:45 a.m. on February 7, 2023, an inmate pulled Holmes off his bunk causing him to fall and suffer a laceration on his head *Id*. at 21:5–23:20. Less than two hours later, two MCSO deputies arrived to conduct rounds, and Holmes told them about the attack. Holmes testified that he reported the attack to deputies conducting rounds at approximately 7:30 a.m., and he did not encounter any MCSO personnel until 7:30 a.m. (Dkt. 36-1 at 22:19–23:8). However, MCSO logs indicate Holmes was accounted for at the 6:00 a.m. headcount on February 7, 2023 (Dkt. 36-2 at 73). Regardless of the time, the deputies removed Holmes from the block and escorted him to a holding cell. *Id*. They then notified medical staff, and two nurses arrived and treated Holmes. *Id*.

After he was attacked, two nurses looked at Holmes head before he was put in a holding cell, but he asserts that he never received additional treatment after that. *Id*. at 25:9–18. He told "[a]nyone who would listen" that he wanted to be "seen by a doctor or taken to the hospital because [he] was so dizzy," but no one paid attention to him. *Id*. at 27:8–18. Holmes asked one deputy who said, "something of the sort that, you're fine." *Id*. at 27:20–24.

4

Holmes was not aware of the process to request medical care and that testified that he never saw medical personnel other than the two nurses who treated him after the attack. *Id*. at 32:3–7. Holmes did not file any grievances about the lack of appropriate medical care, but that is because he neither knew how or that the grievance process existed. *Id*. at 30:12–31:3.

Wellpath medical records indicate Holmes was seen at approximately 7:15 a.m. by Licensed Practical Nurse ("LPN") C. Roseboom who noted the following: Called to block for suspected assault. Patient in holding cell noted to have small hematoma with abrasion to left forehead dried blood on face. Area cleansed bacitracin applied no active bleeding. Patient c/o intermittent dizziness with turning head to right side. Denies headache. Denies nausea or vomiting. *Id*. at 106.

Holmes was released from the ADC on February 8, 2023 (Dkt. 36-2 at 2).

### D. MCSO Policies and Procedures

During all relevant times, MCSO Policy JP4-42: Medical Services was in place and states that MCSO should provide a continuum of medical services to ensure that the health care needs of inmates are met in a timely and efficient manner. *Id*. at 2, 8–10. MCSO Deputy Chief of the Jail Division Michael Turner testified that MCSO,

> [C]ontracted with Wellpath, LLC for the medical care of all inmates. Included in the professional services agreement between the MCSO and Wellpath, LLC was the requirement for Wellpath, LLC to provide comprehensive health care services for the ADC that meet constitutional and community standards, and as well as the standards of the National Commission on Correctional Health Care, the American Correctional Association, and all State of Indiana and federal laws applicable to health care services in jail facilities.

*Id*. at 3.

### III. DISCUSSION

In his Complaint, Holmes alleges that Sheriff Forestal (1) was deliberately indifferent to Holmes' medical needs under the Eighth Amendment in Sheriff Forestal's individual capacity, (2) failed to enact adequate policies regarding the medical care of inmates in Sheriff Forestal's official capacity, and (3) was negligent by failing to maintain effective policies that guided the operation of the ADC (Dkt. 1 at 9–10). Sheriff Forestal seeks summary judgment on all claims.

### A.   **Eighth Amendment Deliberate Indifference Claim**

To begin, the Court determines that Sheriff Forestal is entitled to summary judgment on Holmes' Eighth Amendment claim of deliberate indifference to his medical needs. "'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). For this purpose, each defendant is considered independently. *Id.*

"An official is personally involved if (1) he participated directly in the constitutional deprivation, (2) he acted, or failed to act, with reckless disregard of the plaintiff's constitutional rights, or (3) the conduct that deprived the plaintiff of his constitutional rights occurred at the official's direction or with his knowledge or consent." *Gray v. Faulkner*, 811 F. Supp. 1343 (N.D. Ind. Dec. 30, 1992) (citing *Rascon v. Hardiman*, 803 F.2d 269, 274 (7th Cir. 1986); *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985)).

Here, there is no evidence in the record to support an inference that Sheriff Forestal was personally involved in Holmes' medical care or the failure to provide him with additional medical care after the attack. Indeed, in his response to the Motion for Summary Judgment, Holmes fails to indicate or even argue that Sheriff Forestal was personally involved. A reasonable jury could not find Sheriff Forestal individually liable for any constitutional violation. Accordingly, Sheriff Forestal is entitled to summary judgment on Holmes' Eighth Amendment deliberate indifference claim.

### B. *Monell* Claim

Holmes' claim that Sheriff Forestal failed to enact adequate policies concerning the medical care of inmates proceeds under the theory of liability outlined in *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (the party in interest in official capacity lawsuits in the entity itself). This is because Holmes' official capacity claim against Sheriff Forestal is instead a claim against the MCSO. *See Roberson v. Dart*, 2025 U.S. App. LEXIS 15473, at *5 (7th Cir. 2025) ("A claim against Sheriff Dart in his official capacity is treated as a claim against Cook County itself.") (citing *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008)). Although the MCSO is not a party to this lawsuit, if Holmes' intent was to assert claim against MCSO, the claim still fails.

To prevail on a *Monell* claim against the MCSO, Holmes must first show that he was deprived of a federal right, and then he must show that the deprivation was caused by a MCSO custom or policy or failure to implement a needed policy. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). As the Seventh Circuit has explained:

> There are at least three types of municipal action that may give rise to municipal liability under § 1983: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury

> was caused by a person with final policymaking authority. Inaction, too, can give rise to liability in some instances if it reflects a conscious decision not to take action.

*Id.* (internal quotation marks and citations omitted) The MCSO cannot be held liable under the common-law theory of respondeat superior for its employees' actions. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). *Monell* liability only attaches if the municipality acted with deliberate indifference. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020); *Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997); *see also Miranda v. Cnty. of Lake*, 900 F.3d 335, 345, 352 (7th Cir. 2018) (applying deliberate indifference standard to pretrial detainee's *Monell* claim despite disavowing that standard for pretrial detainee's claims against individual defendants).

Holmes' Complaint does not allege that the MCSO has, or that Sheriff Forestal enacted, explicit policies that caused the alleged constitutional violations (Dkt. 1). Instead, he is alleging a widespread practice that is so permanent and well-settled that it constitutes a custom or practice, under category two (Dkt. 1 at 9–10). A "pivotal requirement" for this type of claim is a showing of widespread constitutional violation. *See Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020); *see also Stockton*, 44 F.4th at 617 ("To establish deliberate indifference to the purportedly unconstitutional effects of a widespread practice, [the plaintiff] must point to other inmates injured by that practice."). While it is not "impossible" for a plaintiff to demonstrate a widespread practice or custom with evidence limited to personal experience, "it is necessarily more difficult . . . because 'what is needed is evidence that there is a true municipal policy at issue, not a random event.'" *Hildredth*, 960 F.3d at 426−27 (quoting *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)). "If a municipality's action is not facially unconstitutional, the plaintiff must prove that it was obvious that the municipality's action would lead to constitutional violations and that the

8

municipality consciously disregarded those consequences." *Dean*, 18 F.4th at 235 (internal quotation marks and citation omitted). "Where the policy relied upon is not itself unconstitutional, *considerably more proof than the single incident will be necessary in every case* to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional deprivation." *Id.* (cleaned up) (emphasis in original).

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721-22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

The Court assumes for purposes of summary judgment that Holmes' injury was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that Sheriff Forestal in his official capacity acted with deliberate indifference—that is, that he "consciously disregarded a serious risk to [Mr. Holme's] health." *Dean*, 18 F.4th at 241 (cleaned up).

Holmes has adduced neither evidence that the MCSO had a policy or practice of not providing necessary medical care, nor does he point to other inmates who were denied necessary medical care. The only evidence in the record regarding medical care indicates that Holmes was

9

evaluated by MCSO-contracted Wellpath medical personnel immediately upon entry into the ADC and that two nurses evaluated him shortly after he reported his attack to deputies. Although Holmes attests that he was not informed of the process to file requests for healthcare or grievances related to healthcare, he has adduced no evidence that would support the inference that other inmates in the ADC were likewise uninformed and, therefore, unable to receive necessary healthcare.

Indeed, the evidence shows that ADC personnel were quick to obtain necessary medical care for Holmes when the need came to their attention. A reasonable jury could not infer from these facts that the MCSO had a widespread policy or practice of not providing necessary medical care or denying inmates the ability to request it. Accordingly, because a lawsuit against Sheriff Forestal in his official capacity is instead a lawsuit against the MCSO, Sheriff Forestal is entitled to summary judgment on Holmes' deliberate indifference to serious medical needs claims. Further, for the reasons stated above, even if Holmes had properly identified MCSO as a defendant, his *Monell* claim would likewise fail.

C.  **State Law Claim**

With Holmes' constitutional claims staged for dismissal, the Court has discretion in deciding whether to exercise supplemental jurisdiction over his remaining state-law claims. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"). The Seventh Circuit has made clear that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial,

10

the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (internal quotation marks and citation omitted).

But exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (cleaned up). Here, although the statute of limitations is not a factor, the case has been pending for a lengthy time, discovery is closed, dispositive motions have been adjudicated, and it is clear how the pendent claim should be decided. Accordingly, the Court exercises supplemental jurisdiction over the remaining state law claim.

In his Complaint, Holmes alleges that Sheriff Forestal was negligent by failing to maintain effective policies that guided the operation of the ADC at the time when he was injured (Dkt. 1 at 9-10). Sheriff Forestal argues persuasively that Holmes cannot proceed with his negligence claim because he did not file a timely notice of tort claim causing his claim to be procedurally barred (Dkt. 37 at 27).

Sheriff Forestal points out that though failure to timely file a tort claims notice does not "necessarily bar a plaintiff's suit, substantial compliance with the ITCA is required." *Zimmer v. Carmel Clay Sch.*, 1:10-cv-1117, 2011 U.S. Dist. LEXIS 4646 221918, at *8 (S.D. Ind. Jan. 14, 2011). What constitutes "substantial compliance" is a question of law. *Id*. The central consideration is "whether the notice supplied by the claimant of his intent to take legal action contains sufficient information for [Sheriff Forestal] to ascertain the full nature of the claim against [him] so that [he] can determine its liability and prepare a defense." *Id*. (internal quotation marks and citation

11

omitted). Sheriff Forestal argues that because Holmes sued him, a governmental employee, for negligence under Indiana law, he must have filed a Tort Claim Notice within 180 days of his injury (Dkt. 37 at 28). Holmes' injury occurred on or about February 8, 2023. Thus, his notice must have been filed on or about October 27, 2023.

Sheriff Forestal has designated evidence that neither he nor MCSO received a tort claim notice in this case (Dkt. 36-2 at 3). Holmes also admits that the only tort claim notice he filed was in conjunction with his state court lawsuit rather than with this lawsuit (Dkt. 36-1 at 18:10–19:9). Holmes contends that he filed a tort claim notice in his now-dismissed state case (Cause No. 49D13-2208-PL-029500) against the MCSO and Zachary Petro with the "Marion County Clerk at the Justice Center at 675 Justice Way." *Id.*. Sheriff Forestal argues that "Holmes could not possibly have submitted the notice with that case" because "Holmes filed his complaint in the state case on August 26, 2022—months before the alleged incidents occurred in this case" (Dkt. 37 at 29). After being informed that the MCSO did not receive the notice, and that there is no record of it in the dismissed state court case, Sheriff Forestal asserts that Holmes was given an opportunity to produce the tort claim notice that he filed, but nothing was ever produced. *Id*.

Regardless, Holmes has designated no evidence or argument to show that he filed a timely tort claim notice in this case and Sheriff Forestal has designated evidence that such notice was never received (Dkt. 36-4). Accordingly, summary judgment is warranted on Holmes' state law claim. "Summary judgment for a defendant is proper when the plaintiff does not provide any evidence that he filed the ITCA notice." *Trask v. Bish*, 2:13-cv-1, 2014 U.S. Dist. LEXIS 81864, at *10 (N.D. Ind. June 17, 2014).

## IV. CONCLUSION

For the reasons explained in this Order, Marion County Sheriff's Motion for Summary Judgment, Dkt. [36] is **GRANTED**.

Final Judgment will issue by separate entry.

**IT IS SO ORDERED**.

Date: 9/29/2025

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

EDWIN N. HOLMES
6311 Shelbyville Rd.
Indianapolis, IN 46237

All electronically registered counsel of record